OPINION OF THE COURT
Martin Evans, J.
This plaintiff tenant’s motion seeks, inter alia, an injunction tolling the period in which she can cure an alleged default, and restraining defendant landlord from serving a notice of termination. It requires the court to re-examine the Yellowstone doctrine in light of the new amendment to the RPAPL. (See First Nat. Stores v Yellowstone Shopping Center, 21 NY2d 630; RPAPL 753, subd 4, as added by L 1982, ch 870, § 2, eff July 29, 1982.)
Plaintiff Schuller is the tenant of an apartment in a building owned by defendant. She occupies the premises under a lease for a three-year term which commenced on March 1, 1980, at a monthly rental of $486.60. In November, 1982, defendant sent tenant a 15-day notice to cure an alleged violation of the lease, viz., that plaintiff has “allowed persons who are not members of [her] immediate family to occupy such premises by license, assignment or sublease, without permission or consent”. Defendant claims that a prior investigation had disclosed that plaintiff had indeed sublet the apartment to another, in violation of the lease, and had not been living there for some *529 time. Plaintiff claims that she stays at the apartment intermittently, “two or three times” per week and concedes that she has had an unidentified “houseguest” occupying the apartment since August. Although she alleges that landlord knew of the houseguest’s presence, and accepted rent for three months, she does not claim that she obtained prior permission either under the lease, or pursuant to statute (see Real Property Law, § 226-b). Neither does she state whether it was she, or her “houseguest” who had tendered the rent, whether she has been compensated in any way by the “houseguest” for the use of the premises, or whether the “houseguest” occupies the apartment under any lease or other agreement, written or oral. Neither does she disclose where she resides on the other four or five nights, when she concededly does not stay in the instant apartment. Plaintiff also admits that she has purchased a nearby apartment at 425 East 58th Street, purportedly only for investment purposes. Plaintiff attaches as proof, nearly three dozen classified advertisements[1] offering sublets of a variety of apartments, of different sizes and locations, during the last two years. Some of the notices include the wording “many others”.[2]
Yellowstone relief enables a tenant to litigate the propriety of a claimed breach without endangering his leasehold by misjudging his legal circumstances. Without an injunction tolling the cure period, the lease will be deemed to have terminated at the end of the cure period, which is necessarily earlier than the summary holdover proceeding. If the tenant is unsuccessful in presenting his defenses in the holdover proceeding, he would have no further oppor *530 tunity to cure the breach. Without Yellowstone protection a tenant would thus be forced to choose between defending himself at his peril or submitting to the landlord’s demand that the tenant remove a condition which he believes is permissible.
Yellowstone relief was never intended to revive an expired cure period, or to prolong one indefinitely. (See First Nat. Stores v Yellowstone Shopping Center, 21 NY2d 630, supra; Health'N Sports v Providence Capitol Realty Group, 75 AD2d 884.) Rather, it was intended to preserve the cure period by postponing its running until after the adjudication of the parties’ rights. Because the law looks with disfavor on automatic forfeitures of rights, and because most holdover proceedings are predicated on the tenant’s failure to correct, during the cure period, the alleged lease violation cited in the notice to cure, Yellowstone injunctions have been routinely sought in recent years. The practice of commencing parallel proceedings in the Civil and Supreme Courts unnecessarily burden both courts, and tenants and landlords alike, with additional unnecessary expense and labor. It undermined the purposes of both the summary proceeding and the new Housing Court, since it prevented a speedy adjudication of the parties’ rights in a single, convenient forum. While consolidation was frequently sought and granted, the practice continued to be time-consuming, expensive and confusing, often a trap for an inexperienced attorney or an unrepresented tenant. The realization grew that a legislative solution was necessary.
■ In the final days of last year’s session, the Legislature adopted an amendment to RPAPL 753, which reads as follows: “4. In the event that such proceeding [i.e., a holdover summary proceeding] is based upon a claim that the tenant or lessee has breached a provision of the lease; the court shall grant a ten day stay of issuance of the warrant, during which time the respondent may correct such breach.” (L 1982, ch 870, § 2, eff July 29, 1982.)
It is likely that the Legislature provided for a 10-day cure period, since that is the length commonly specified in the form leases in general use in the City of New York. The statute is limited only to holdover proceedings within file *531 City of New York where the premises are occupied for dwelling purposes. Thus, while it is inapplicable by definition, to nonpayment proceedings, to commercial leaseholds, or to property outside of the city, it pre-empts the preponderance of situations where Yellowstone relief had been sought.
The statute, however, is not unproblematical. The dearth of legislative history, perhaps resulting from its quick passage during the Legislature’s busy final days, makes it difficult to determine the Legislature’s precise intent. Moreover, the bill is inartfully drafted and conceptually inconsistent, as a statutory substitute for Yellowstone relief. It is thus somewhat ambiguous. The new statute provides for a 10-day stay of the issuance of a warrant of eviction. Issuance of the warrant presupposes an adjudication unfavorable to the tenant on the litigated issue of the alleged breach. Such a determination, in turn, is predicated on the prior issuance of a notice to cure, expiration of the cure period without curative action by the tenant, and the consequent termination of the tenancy under the terms of the lease. It is hornbook law that once the lease terminates — automatically, in the case of a conditional limitation, or by landlord’s issuance of an elective notice of termination, in the case of a condition subsequent — it cannot be revived by later judicial action. (See First Nat. Stores v Yellowstone Shopping Center, 21 NY2d 630, 637-638, supra.) It is precisely for this reason that a tenant must seek Yellowstone injunctive relief tolling the cure period before the cure period expires. In contrast, the new statute simply mandates that the court stay the warrant once issued for 10 days, which alone would not appear effective as a means of reviving a terminated tenancy. Nevertheless, the internally inconsistent final clause manifests that intent. Had the Legislature intended to provide for merely a mandatory 10-day respite of eviction to avoid hardship (cf. RPAPL 753, subd 1, providing for a six-month discretionary stay in more limited circumstances) and not a renewed cure period which could then revive the tenancy, it would not have provided that the tenant is permitted to correct the breach during the 10-day stay. A contrary view would render the final clause meaningless surplusage; it is *532 even less satisfying logically than the amendment’s apparent intent. Thus, while a tenant would be permitted to gratuitously remove a violation, perhaps with some expense and effort, he would still be obligated to vacate within' 10 days. The Legislature could not have intended such an anomalous result. Rather, the clause permitting correction of the breach demonstrates legislative intent that the tenancy be permitted to continue until determination, and thereafter, either through the 10-day cure period if the breach is not cured, or through the lease term, if the breach is cured. Only by recognizing such intent can all portions of the statute be rendered meaningful and harmonious. (See McKinney’s Cons Laws of NY, Book 1, Statutes, §§ 96, 98, 231; see, also, Langham Mansions Co. v Bodine, NYLJ, Jan. 12, 1982, p 6, col 1 [granting retroactive effect to L 1982, ch 870].)
In the wake of this new legislation, Yellowstone injunctions would be required to preserve tenancies in very few cases, as, for example, where the remaining cure period provided under the lease is longer than the 10-day statutory period.
No such circumstances exist in the case at bar. Plaintiff’s lease, unlike the statute, provides for a 15-day cure period. Plaintiff, in her moving papers, admits that the notice to cure was served on her on November 15, 1982. The order to show cause, containing a temporary restraining order tolling the cure period, was signed on November 26, 1982. If an injunction were to be granted, plaintiff’s remaining period to cure, after determination, would total only four days. If plaintiff then does not cure within the remaining four days, and if defendant then brings on a successful summary proceeding, the statute will still afford plaintiff a 10-day cure period. Since in this case, as in most, the statute affords a greater remedy to the tenant than that obtainable by a Yellowstone injunction, injunctive relief is not necessary to preserve the tenant’s pre-existing rights under the lease.
Courts have held that the application for a Yellowstone injunction is not ordinarily subject to the same strictures as other injunctions. They have accepted evidence of a mere possibility, rather than proof of the likelihood, of *533 ultimate success on the merits, and have effectively assumed, from the context of the case, the inevitability of irreparable harm. (See Finley v Park Ten Assoc., 83 AD2d 537; Oliver v 434 East 58th Street Assoc., NYLJ„ Aug. 4, 1982, p 7, col 1.) Nevertheless, a request for a Yellowstone injunction is still a prayer for equitable relief, which requires that plaintiff make a sufficient showing that she has no adequate remedy at law. It is clear that the new statute affords such a remedy.
The motion is accordingly denied.

. It cannot be determined, from the evidence before the court on this motion, whether any of these advertisements applied to the subject apartment. Neither can it be determined whether the quoted rentals were set in compliance with the Rent Stabilization Code or other applicable statutes.

. These advertisements strongly suggest that plaintiff may be in the business of acquiring apartments for subsequent rental to others. If this be the case, she very well may not be a legitimate tenant of the subject apartment at all. If she is acting as a landlord, profiteering at the expense of her tenant, from the owner’s capital investment and her own rent-stabilization rights, without affording the same rights to her own tenant (see Matter of Krantz v Conciliation & Appeals Bd. of City of N. Y., 57 NY2d 915), then she should be barred by the clean hands doctrine from the equitable relief she seeks here.