HERB WILEN et al., Appellants, v HARRIDGE HOUSE ASSOCI-
ATES, Respondent.

First Department, June 7, 1983

APPEARANCES OF COUNSEL

*Joseph Gaier* of counsel (*Larry Sutton* with him on the brief; *Joseph Gaier, P. C.,* attorneys), for appellants.

*Stephen M. Jackel* of counsel (*Norman Gross* with him on the brief; *Hofheimer Gartlir Gottlieb & Gross,* attorneys), for respondent.

OPINION OF THE COURT

FEIN, J.

Plaintiffs Herb Wilen and Herb Wilen Studio, Inc., and defendant landlord executed a three-year lease in 1972 wherein plaintiffs were described as "tenant" for an apartment to be used for dwelling purposes only. The lease was signed by both plaintiffs. All checks in payment of the rent

were executed and delivered by the corporate plaintiff. Plaintiffs contend, and it is undisputed on this record, that at the time of the execution of the lease landlord was advised that the individual tenant would reside in the premises and the corporate tenant would use them as a photo retouching studio (Herb Wilen Studio, Inc.). The lease was renewed in the same form periodically for three-year terms, the current lease having been executed on October 16, 1981. Plaintiffs contend, and it is also undisputed on this record, that the premises were used by the individual plaintiff as a dwelling place and by the corporate plaintiff as a photo retouching studio through the years, and that this was known to defendant landlord who never objected until November 4, 1982, when defendant sent a 10-day notice to cure, claiming a breach of the lease because the premises were being occupied for commercial purposes in purported violation of the lease.

Prior to the expiration of the 10-day period and in order to toll or stay the effect of the notice to terminate the tenancy, plaintiffs commenced this action on November 12, 1982 seeking a declaratory judgment that the use and occupancy of the apartment did not constitute a violation of the lease, and simultaneously moved by order to show cause for a preliminary *"Yellowstone"* injunction with a temporary restraining order to preserve the *status quo* while challenging the landlord's contention in the notice to cure that there was a substantial lease violation warranting its termination (*First Nat. Stores v Yellowstone Shopping Center*, 21 NY2d 630). Plaintiffs contended that without such an injunction the 10 days fixed in the notice to cure would expire, the lease would terminate and the tenancy would come to an end, leaving the tenant without an opportunity to cure in the event of a determination, in a subsequent dispossess proceeding brought by landlord, that the tenant had breached the lease.

Special Term (116 Misc 2d 724) denied the injunction upon the ground that RPAPL 753 (subd 4) precludes the need for a *Yellowstone* injunction, asserting that the issue could be raised in the Civil Court in a summary proceeding brought by the landlord to dispossess the tenant where

equitable defenses such as are asserted in plaintiffs' application may be raised (RPAPL 743).

Special Term's opinion did not consider the limitations on the power of the Civil Court, that it lacks authority to issue a declaratory judgment declaring the rights of the parties to the lease as well as the power to grant specific performance or to direct reformation where the subject matter involves a sum in excess of $10,000 (CCA, § 213). Also not discussed was the effect of the statutorily directed mandatory 10-day stay in the issuance of the Civil Court warrant to afford tenant an opportunity to "correct such breach". Does such stay revive or continue a lease which has terminated by virtue of a landlord's notice to cure where the tenant has not cured the breach during the period fixed in the notice?

The basic issue is whether RPAPL 753 (subd 4) eliminates the need for a tenant to obtain a *Yellowstone* injunction after receiving a notice to cure. The amendment applies only to residential dwellings in New York City. It is undisputed that prior to the amendment the tenant necessarily had to apply to the Supreme Court to obtain an injunction in order to prevent termination of the tenancy upon expiration of the cure period. As *Yellowstone (supra)* held, in the absence of an injunction, the court could not afford a breaching tenant an opportunity to cure the breach because the lease and the tenancy had terminated pursuant to the landlord's notice. The lease was beyond the power of the court to revive.

RPAPL 753 (subd 4), effective July 29, 1982, provides: "In the event that such proceeding is based upon a claim that the tenant or lessee has breached a provision of the lease, the court shall grant a ten day stay of issuance of the warrant, during which time the respondent may correct such breach." Although the amendment mandates the Civil Court to stay the issuance of a warrant of dispossess for a period of 10 days after judgment of possession in favor of the landlord in order for the tenant to "correct such breach", it does not speak to the status of the lease. The amendment was apparently designed to mandate a stay and thus to supplement RPAPL 753 (subd 1), which pro-

vides for a discretionary six-month stay where it has been adjudicated in the dispossess proceeding that the tenant is holding over and needs time to relocate to a new dwelling.

It is plain that the six-month discretionary stay under RPAPL 753 (subd 1) does not revive the lease or the tenancy. It merely affords the tenant an opportunity to relocate. Whether RPAPL 753 (subd 4) intends to revive the lease is not clear. In a case such as that now here, where the landlord has served a notice of termination if there is no cure, the lease will terminate on the date fixed in the landlord's notice unless an injunction is issued or there has been a cure prior thereto. If the landlord is not now enjoined, he will then be in a position to institute a summary proceeding against the tenant as a holdover after termination of the lease by virtue of the expiration of the time fixed in the landlord's notice. If RPAPL 753 (subd 4) was intended to revive the lease for all purposes where the breach is cured within the 10-day period during which issuance of the warrant is stayed after judgment in favor of the landlord, the section does not say so. So far as appears from the statute, all that is intended is to permit the tenant to continue in occupancy if there is a cure within the 10-day stay. Nothing in the statute speaks to other lease rights.

*Yellowstone's* teaching that, without an injunction, the court is powerless to revive or extend a lease which has expired and terminated by virtue of tenant's breach of a condition without cure, within the time fixed in the landlord's notice, is in accord with well-settled real property law. It is difficult to conclude that the Legislature intended such a drastic change in the law of real property respecting conditional limitations without so stating, although one court which discussed the issue has so held (*Schuller v D'Angelo,* 117 Misc 2d 528).

Nothing in the legislation's sponsor's memorandum indicates such purpose. That RPAPL 753 (subd 4) was not intended by the Legislature to make this kind of a modification in the law of real property or to bring about a blanket elimination of *Yellowstone* injunctions is clear from the sponsor's memorandum respecting the new legislation which speaks only of its purpose as remedial in

nature, to allow a tenant to cure a breach once adjudicated against him, and not by implication to eliminate in all cases the need for declaratory relief with a *Yellowstone* injunction. (Governor's bill jacket, L 1982, ch 870.)

A *Yellowstone* injunction should still be available where a tenant is entitled to affirmative equitable relief such as specific performance, lease reformation where the controversy exceeds $10,000, a mandatory injunction or a situation in which the 10-day mandatory stay is insufficient to cure a breach, as, for instance, to remove illegal alterations or to eliminate an unauthorized use. There is nothing in the language of the statute or the sponsor's memorandum to provide a basis for the conclusion that it was the intention to divest the Supreme Court of plenary jurisdiction where such jurisdiction is warranted.

It has been repeatedly held that *Yellowstone (supra)* is intended only to preserve the *status quo* until the parties' rights can be fully adjudicated while the tenancy remains in effect without consideration of the merits of the parties' contentions (*Ameurasia Int. Corp. v Finch Realty Co.*, 90 AD2d 760; *Physicians Planning Serv. Corp. of Conn. v 292 Estates*, 88 AD2d 852; *Podolsky v Hoffman*, 82 AD2d 763; *Wuertz v Cowne*, 65 AD2d 528; *Madison Ave. Specialties v Seville Enterprises*, 40 AD2d 784).

In dealing with the question now before the court, we need not resolve all of these issues. It is sufficient to conclude only that the statute was not intended to eliminate the power to render *Yellowstone* injunctions, but merely to make available an additional remedy to protect the tenant where appropriate, where a breach has been adjudicated against him.

It is plain enough that in many cases a cure can be accomplished within the 10-day period authorized by the statute and where the condition bringing about the breach is plainly and clearly a violation of the lease terms. It is something else where there is a question as to the possibility of correcting the breach within the 10 days because of physical or other conditions, or where what is needed is declaratory relief, specific performance or reformation of the lease.

Thus a 10-day period may be too short, such as where extensive alterations found violative of the lease may be required to be removed or the unauthorized use cannot feasibly be terminated within 10 days, or the work required to be done requires more than 10 days, or where a subtenant or cotenant occupies the space and refuses voluntarily to remove despite the order directed against the tenant named in the lease. There is clearly a question whether the Civil Court would have power to extend the 10-day period in such circumstances. Nothing in the statute so provides. If the power exists outside the statute, there would have been no need for the statute and no basis for *Yellowstone* (*supra*). One thing is clear: the statute is inartfully drawn if it was designed to be greater in scope than merely to give the Civil Court power to withhold issuing a warrant of dispossess for 10 days so as to allow a tenant to correct the breach.

Thus the statute does not appear to deal with cases where a tenant requires affirmative equitable relief only available in the Supreme Court by way of a declaration of rights on a complex question of law with respect to the breach of the lease or where, as here, reformation may be required, or where a tenant may require specific performance to direct that a landlord give him a lease renewal or to direct that a landlord provide prescriptive (co-op) purchase rights notwithstanding a lease violation or to direct that a landlord consent to a sublease under section 226-b of the Real Property Law notwithstanding an alleged illegal sublet as grounds for a notice to cure. In such instances the Civil Court lacks the equitable power to furnish adequate relief.

Plainly there is not too clear a distinction between what may be interposed as an equitable defense in the Civil Court so that tenant's rights may be fully adjudicated and complete relief afforded without a *Yellowstone* injunction, and those instances where the broad equity powers of the Supreme Court are necessary to afford a tenant complete relief.

An examination of *Yellowstone* itself points up the issue. In that case, involving a shopping center, the fire department had placed a violation on a portion of the premises

occupied by the tenant in question by reason of the failure to install a sprinkler system. At issue between the landlord and the tenant was who was required to pay for the installation of the system. The landlord served a notice upon the tenant that the lease would terminate on 10 days' notice unless the tenant complied and removed the violation. The tenant failed to do so, but instead, one day after the 10 days had expired, made an application to the Supreme Court to stay his eviction for failure to comply. The Appellate Division, Second Department, found (28 AD2d 873) that the obligation was that of the tenant and issued an order staying the enforcement of the termination notice for 20 days so that the tenant could comply. It does not clearly appear from the opinions in that case whether the system had been installed so that the only obligation remaining was to pay for it or whether the sprinkler system remained to be installed. The Court of Appeals (21 NY2d 639, *supra*) modified so much of the Appellate Division order as preserved the lease and as enjoined the landlord from summary proceedings to evict the tenant, and otherwise affirmed. The Court of Appeals ruled that the lease had come to an end on the day fixed in the landlord's notice to cure, and that in order to prevent such result the tenant should have obtained an injunction staying the running of the notice to cure until a resolution of the dispute. The court concluded it was powerless to revive the expired lease. It did not pass on the question whether, had the application been timely made, the Appellate Division would have had a right to extend the cure time for 20 days despite the 10-day provision in the lease.

The opinions are equivocal as to whether the installation work had been done. Obviously if all that remained was the payment of money, the 10 days designated in the lease would be adequate. However, if the sprinkler system had not been installed, it may very well be that a problem would have remained if such installation could not be accomplished within the 10 days fixed in the lease or the 20 days designated in the Appellate Division order. This question remains open despite suggestions in the cases that a good-faith effort to begin compliance is sufficient. Indeed, some

of the cases involve just such provisions in the lease, as does the lease *sub judice*. It is plain that in such cases there is a need for a *Yellowstone* injunction to allow full adjudication of the tenant's rights. Although by the very nature of things many of the breaches involved in residential occupancies, to which RPAPL 753 (subd 4) applies, may not be so extensive, it certainly is not clear from the statute that it was intended to eliminate such relief completely where needed.

The concern expressed at Special Term and in some of the other cases about the traffic between the Civil Court and the Supreme Court in cases which should be adjudicated in the Civil Court, subject to a motion to consolidate where Civil Court relief is thought to be inadequate, overlooks cases such as this one where no Civil Court action has yet begun. As noted, the sponsor's memorandum in support of the amendment makes no reference to such problem nor to the *Yellowstone* injunction. It expresses no purpose to restrict the Supreme Court's jurisdiction. It merely states "present law makes no provision for a stay where a breach is involved". This obviously overlooks the availability of a *Yellowstone* injunction, making it clear that *Yellowstone* was not the consideration. The memorandum goes on to state that it was designed to cover breaches "temporary in nature correctable within the ten day period. * * * Many tenants have the reasonable expectation that they will have an opportunity to cure once they have been advised by the court that, in fact, they have breached the lease provision. Under existing law, there is no such opportunity." (NY Legis Ann, 1982, p 280.)

In the present case the issue is whether, notwithstanding the language of the lease, the tenant is entitled either to a declaratory judgment or to reformation establishing that the parties agreed to, and have operated upon the basis that, occupancy of the premises for both residential and commercial purposes is authorized. The Civil Court has no jurisdiction to issue either a declaratory judgment or to grant reformation upon those facts (CCA, §§ 212, 213). Similarly, the grant of specific performance, which

may be required to accomplish any lease renewal upon expiry of the present lease December 31, 1984, is not within the compass of the Civil Court.

Accordingly, the order, Supreme Court, New York County (RICHARD S. LANE, J.), entered December 1, 1982, should be reversed, on the law and the facts, and plaintiffs' motion for a preliminary injunction should be granted, with costs.

CARRO, J. P., ASCH, BLOOM and KASSAL, JJ., concur.

Order, Supreme Court, New York County, entered on December 1, 1982, unanimously reversed, on the law and the facts, and plaintiffs' motion for a preliminary injunction granted. Appellants shall recover of respondent $50 costs and disbursements of this appeal.