■ SEYMOUR C. POST, Respondent, v 120 EAST END AVENUE CORPORATION, Appellant. — Order, Supreme Court, New York County (Gable, J.), entered October 13, 1982, granting plaintiff a preliminary injunction, affirmed, without costs. We do not agree with our dissenting colleagues that the violation alleged, if found to exist, is readily curable within the 10-day period prescribed by RPAPL 753 (subd 4), and consider it unnecessary to address the other issues discussed in the dissenting opinion. Concur — Kupferman, J. P., Sandler and Asch, JJ.

Silverman and Bloom, JJ., dissent in a memorandum by Bloom, J., as follows: This appeal again presents us with the question of the effect of RPAPL 753 (subd 4), upon the discretionary power of the court to issue a temporary injunction authorized under *First Nat. Stores v Yellowstone Shopping Center* (21 NY2d 630). Inasmuch as the issue has been before us several times in recent months, it becomes necessary to determine whether the decisions involving these cases are held together by a common thread. *Yellowstone* involved a conflict between a landlord and a tenant over the obligation to install a wet sprinkler system required by the municipal authorities. Ultimately, to bring the matter to a head, the landlord served upon the tenant a notice requiring it to cure its alleged breach of the lease by complying with the direction to install the sprinkler system. The lease made provision for such a notice and, in the event the default was not cured within 10 days, authorized the landlord, at its option, to declare the lease ended and to "re-enter upon the leased premises either with or without process of law, and remove all persons therefrom". When the tenant failed to comply with the demand the landlord served upon the tenant a notice terminating the lease. The tenant chose not to cure the default. Within the 10-day period it commenced an action for a declaratory judgment by service of a summons only. Still within the 10-day period it served its complaint and moved, by order to show cause, for a temporary injunction. However, the order to show cause did not contain a temporary restraining order and the motion came on to be heard *after* the 10-day period to cure had expired. In the period intervening between the service of the order to show cause and the return date thereof the landlord exercised its option to terminate the lease. On the return day of the motion it was adjourned and, as a condition of the adjournment, a temporary restraining order was granted. The Court of Appeals held (p 637) that: "[t]he temporary restraining order merely preserved the *status quo* as of the date it was obtained * * * [T]he Appellate Division could not revive it [the lease] unless it read into the lease a clause to the effect that the tenant could have an additional 20 days to cure its default before the landlord could commence summary eviction proceedings. This the court was powerless to do absent a showing of fraud, mutual mistake or other acceptable basis of reformation". The teaching of *Yellowstone* is clear. Where a lease provides that it may be terminated for failure to comply, for a specified time, with the terms thereof, and such failure occurs, and the landlord requires that the breach be remedied within the time specified, a tenant is provided with two options. He must cure the default, or, within the time frame provided for cure, he must toll the period of limitation by enjoining the landlord from declaring the lease terminated. If he fails to exercise either option the lease is at an end. In 1982 the Legislature enacted a new subdivision

4 to RPAPL 753. That subdivision reads: "In the event that such proceedings [to recover the possession of premises in the City of New York occupied for dwelling purposes] is based upon a claim that the tenant or lessee has breached a provision of the lease, the court shall grant a ten day stay of issuance of the warrant, during which time the respondent may correct such breach". Section 753 deals with a summary proceeding normally brought in the Civil Court for the recovery of possession of residential real property. We can only assume that its purpose was to render unnecessary the need for the *Yellowstone* injunction with respect to such property. While we have no legislative history to guide us (and the sponsor's memorandum provides little assistance) the statute makes sense only in the context of that assumption. Parenthetically, it must be noted that the statute deals only with the *effect* of *Yellowstone*. It makes no endeavor to treat with the legal theory underlying it. By centering attention on effect while leaving cause untouched, the statute has lent itself to confusion. Analysis of the cases recently decided by us demonstrates clearly that the purpose which we attribute to the statute corresponds with the interpretation which we have given to the statute. In *Mannis v Jillandrea Realty Co.* (94 AD2d 676), we reversed the granting of the temporary *Yellowstone* injunction and dismissed the complaint. There, the landlord served the tenant with a notice to cure bottomed on the claim that he had permitted occupancy of the apartment by persons other than himself and members of his immediate family in violation of an express provision of the lease. Apparently at the request of the tenant, a girlfriend apartment sat for him while he was absent from the city for business reasons. Upon his return home she vacated the premises and returned to her own apartment. We held that RPAPL 753 (subd 4) accorded complete protection to the tenant by affording him ample opportunity to cure. We were of the opinion that the temporary injunction was unnecessary and vacated it. Inasmuch as there was no basis for declaratory relief, we dismissed the complaint. In *Klausner v Frank* (95 AD2d 653), the tenant was charged with making unauthorized alterations to his apartment. Special Term granted the temporary injunction. We vacated it in light of the tenant's admission that the alterations were readily subject to correction. In such circumstances plaintiff could obtain all the relief he claimed was required by way of a *Yellowstone* injunction under RPAPL 753 (subd 4). A wholly different situation was presented in *Wilen v Harridge House Assoc.* (94 AD2d 123). In that case the tenant was charged with using his apartment as a photo-retouching studio in addition to residing there. The lease provided that the apartment was to be used for residential purposes only. The landlord demanded that the improper use be cured. In response the tenant asserted that the apartment had been used by him for residential and commercial purposes since the inception of the tenancy in 1972 with the knowledge and consent of the landlord; that the rent had been paid throughout by the corporate check of the photo-retouching studio; and that the leases covering the apartment had been entered into both with the individual and corporate tenants. His application for a *Yellowstone* injunction was granted at Special Term. We affirmed, noting that the relief required might well include a reformation of the lease to indicate that the commercial use was intended by the parties, a matter over which the Civil Court has no jurisdiction and for which RPAPL 753 (subd 4) accords no relief. Thus, it becomes apparent that the amendment to section 753 does not include *all* cases encompassed within the ambit of *Yellowstone*. In most cases the statutory relief will be complete and adequate. However, in the unusual case, where the statutory relief will not suffice, *Yellowstone* still remains viable. Against this background we come to an analysis of the facts before us. Defendant is a co-operative housing corporation which owns premises 120 East End Avenue, New York City. Since 1972 plaintiff has been the

owner of shares in the defendant corporation and is the holder of a proprietary lease to apartment 4A. That lease provides that the premises may be used for residential purposes only. Plaintiff is a duly licensed psychiatrist and prior to some time in 1981 he maintained an office for the practice of his profession at 120 Central Park West. Prior to the vacatur of his Central Park West office plaintiff treated only an occasional patient at his home. It is alleged by defendant that since plaintiff has vacated his Central Park West office he has transferred the bulk of his practice to his home seeing as many as 12 to 16 patients there daily. This is sharply disputed by plaintiff, who attests that he is an associate clinical professor of psychiatry at Columbia Medical School and maintains an office at Columbia Presbyterian Medical Center where he treats the bulk of his patients. He concedes that for a period of time he had been seeing some carefully screened patients at his home on an intermittent and casual basis, a practice which he still continues. By letter dated June 3, 1981, the managing agent for the co-operative corporation notified plaintiff that the use of his apartment for professional purposes constituted a violation of his lease. Apparently some conversation thereafter ensued between plaintiff and defendant's representative, for, on July 1, 1981, the managing agent again wrote to plaintiff referring "to our recent conversation in which you described the necessity for using your apartment temporarily for professional purposes". The letter concluded with the hope that plaintiff would soon find new office space. Plaintiff responded by letter dated July 31, 1981, noting that he was seeing the bulk of his patients at his offices at Columbia Presbyterian Medical Center and in Greenwich, Connecticut, and expressing his thanks for the co-operative corporation's understanding. Whatever the reason, plaintiff continued seeing patients at his apartment. By letters dated February 23, 1982, sent by registered and regular mail, plaintiff was advised that he was required to cure the alleged breach of his proprietary lease "by the 26th day of March, 1982". This action was instituted by summons dated March 15, 1982 and complaint verified March 12, 1982. By order to show cause dated March 15, 1982, returnable March 19, 1982, containing a temporary restraining order and tolling plaintiff's time to cure the alleged violation of his lease, plaintiff sought a *Yellowstone temporary* injunction. Defendant cross-moved to dismiss the complaint. By order entered October 13, 1982 Special Term granted the motion and denied the cross motion and defendant appeals. We are of the opinion that this case is quite similar to *Mannis v Jillandrea Realty Co.* (*supra*), and *Klausner v Frank* (*supra*), and wholly dissimilar from *Wilen v Harridge House Assoc.* (*supra*). The evil complained of, if found to exist, is readily curable within the time span provided by RPAPL 753 (subd 4). That no issue requiring possible reformation of the lease is involved is readily apparent from the record. Plaintiff has never questioned the interpretation given to the lease by defendant. It is also clear that the issue of whether there has been a substantial violation of the lease is as readily subject to determination in the Civil Court as it is in the Supreme Court. In these circumstances we cannot see any valid basis for the continuance of the *Yellowstone* injunction or for permitting the continuance of this action. Accordingly, we would reverse the order of Special Term granting the temporary injunction restraining the commencement of a proceeding to recover possession of residential property and tolling the period within which to comply with the notice to cure and deny that motion and grant the motion to dismiss the complaint.