OPINION OF THE COURT
 

 Simons, J.
 

 We are asked to interpret recently enacted RPAPL 753 (subd 4) (L 1982, ch 870). The section applies to holdover tenants in residential dwellings in New York City and the new subdivision 4 provides: “In the event that such proceeding [a summary proceeding to recover possession] is based upon a claim that the tenant or lessee has breached a provision of the lease, the [Civil] court shall grant a ten day stay of the issuance of the warrant [to remove], during
 
 *23
 
 which time the respondent [tenant] may correct such breach.” The question arises in an appeal from an order of Special Term of Supreme Court granting plaintiff tenant a preliminary injunction in a declaratory judgment action and denying defendant’s cross motion to dismiss the complaint.
 

 Plaintiff, a psychiatrist, is a residential tenant pursuant to a proprietary lease in a building owned by defendant at 120 East End Avenue. Several years ago, he was required to vacate his private office and he began to schedule patients’ visits either at his office at Columbia University Medical School, where he is an associate professor, or at his 14-room apartment in defendant’s building. In June, 1981, defendant sent a notice to plaintiff stating that use of the premises for professional purposes without its consent violated terms of the lease which required that the apartment be used only as a private dwelling. It demanded that plaintiff discontinue seeing patients in the apartment immediately. There followed correspondence and conferences at which plaintiff admitted using his apartment to see patients intermittently, but stated that he was actively seeking office space. The situation did not change and on December 9, 1981, defendant again formally demanded that plaintiff stop seeing patients in the apartment. Finally, on February 23, 1982, defendant served a notice on plaintiff declaring that he was in violation of the residential covenants of the lease and that if he did not cure the violation by March 26,1982, his lease would be terminated as provided by its terms. Before the time to cure expired, plaintiff instituted this Supreme Court action seeking a declaration of his rights and an order permanently enjoining defendant from interfering with his right to quiet enjoyment. He pleaded four causes of action alleging (1) that he had not breached the terms of the lease, (2) that any default was not material, (3) that defendant was estopped from enforcing the requirements of residential use only and (4) that defendant had waived the default. These claims present disputed issues of facts.
 

 On March 15,1982, plaintiff obtained a show cause order from Supreme Court which contained a temporary restraining order. Defendant served a cross motion, return
 
 *24
 
 able on the same day, seeking dismissal of plaintiff’s complaint. On September 30,1982, the court denied defendant’s cross motion and granted plaintiff a
 
 Yellowstone
 
 preliminary injunction staying further proceedings by defendant until determination of the parties’ claims at trial.
 

 Subsequent to the submission to Special Term, but before its order was executed, the Legislature amended RPAPL 753 by adding the new subdivision 4, effective July 29, 1982. The parties did not submit the application of the new subdivision to Special Term because it became effective after argument of the motion and defendant did not move for reargument. The Appellate Division affirmed the order and granted leave to appeal on a certified question (95 AD2d 697). That court considered the amended statute, the majority holding that it had no application because plaintiff’s violation could not be cured in 10 days as the statute provided, the two dissenting Judges contending that the violation could be cured within 10 days. The dissenters therefore believed that the
 
 Yellowstone
 
 injunction should not have been granted because plaintiff’s rights could be protected in Civil Court summary proceedings.
 

 We agree that the new statute should be considered in the determination of this appeal. It is procedural and remedial in nature and it should be liberally construed to spread its beneficial effects as widely as possible. More importantly the statute will apply in any subsequent Civil Court proceedings, should this complaint be dismissed (see
 
 Klausner v Frank,
 
 95 AD2d 653, 654;
 
 Nunez v 164 Prospect Park West Corp.,
 
 92 AD2d 540; McKinney’s Cons Laws of NY, Book 1, Statutes, § 54, pp 108-109).
 

 Yellowstone
 
 injunctions became commonplace following our decision in
 
 First Nat. Stores v Yellowstone Shopping Center
 
 (21 NY2d 630). That appeal involved a controversy between a landlord and a commercial tenant over which of them was required to bear the expense of a sprinkler system required by government orders. The landlord, contending that the cost properly belonged to the tenant, implemented provisions in the lease which provided that if the tenant did not cure a breach within 10 days the tenancy could be terminated. The tenant instituted legal
 
 *25
 
 proceedings but failed to obtain a temporary restraining order. Long before the dispute was legally resolved, the lease terminated because of the tenant’s failure to cure or to toll the cure period. We held that under such circumstances the courts were powerless to revive the expired lease. As a result, tenants developed the practice of obtaining a stay of the cure period before it expired to preserve the lease until the merits of the dispute could be settled in court. The alternative for the tenant was to stand on his rights without correcting the violation, wait for the landlord to start summary proceedings in Civil Court and then defend against the landlord’s claim in that court. If he won, well and good; if he lost he forfeited everything because the lease had terminated. The remedy for this all or nothing result was to obtain a stay to toll the running of the cure period and the expiration of the lease. Because Civil Court does not have jurisdiction to grant injunctive relief, stay applications necessarily were made in Supreme Court in conjunction with an action for declaratory judgment. Once the merits had been decided by Supreme Court the stay terminated. If the tenant prevailed he had no further need for a stay. If he lost, he either cured the default during whatever part of the cure period remained or the lease expired and he was subject to removal by summary proceeding. These preliminary injunctions, known as
 
 Yellowstone
 
 injunctions, have been criticized as a means of stalling indefinitely the termination of a breached tenancy and they have been praised as a protection against arbitrary action by a landlord (see Batista, “Yellowstone” Revisited: The Pendulum Has Swung, NYU, Dec. 29, 1983, p 1, cols 3, 4; and cf. Wallach, “Yellowstone” Revisited II — A Different View of Doctrine, NYU, Feb. 21, 1984, p 1, cols 3,4). Whatever their merits, the courts have granted them routinely to avoid forfeiture of the tenant’s interest and in doing so they accepted far less than the normal showing required for preliminary injunctive relief. An applicant rarely has been required to demonstrate a likelihood of success, irreparable injury, and that the equities favored preliminary relief as those terms are traditionally understood. Indeed, the courts have not professed to require such evidence (see
 
 Ameurasia Int. Corp. v Finch Realty Co.,
 
 90
 
 *26
 
 AD2d 760;
 
 Finley v Park Ten Assoc.,
 
 83 AD2d 537;
 
 Podolsky v Hoffman,
 
 82 AD2d 763). The threat of termination of the lease and forfeiture, standing alone, has been sufficient to permit maintenance of the
 
 status quo
 
 by injunction. It is this history which presumably led to amendment of the statute.
 

 RPAPL 753 (subd 4) provides that in a summary proceeding in Civil Court the court shall, after adjudicating the merits, grant a losing tenant a 10-day period within which to cure the default. In effect it gives the losing tenant what he would receive with a
 
 Yellowstone
 
 injunction in a Supreme Court action after losing, a period of time to cure the violation before being subject to removal. Thus defendant contends that the statute provides full protection to tenants, eliminating any possibility that a satisfactory preliminary showing can be made that the equities of the situation warrant injunctive relief (see, e.g.,
 
 Klausner v Frank,
 
 95 AD2d 653,
 
 supra; Nunez v 164 Prospect Park West Corp.,
 
 92 AD2d 540,
 
 supra;
 
 and see
 
 Newmann v Mapama Corp.,
 
 96 AD2d 793 [Silverman, J., concurring]). Specifically, it contends that plaintiff’s injunction must be vacated and its complaint dismissed because he can obtain full relief in Civil Court.
 

 There is, however, one notable distinction between the
 
 Yellowstone
 
 remedy and the statutory remedy. A
 
 Yellowstone
 
 injunction prevents expiration of the lease by tolling the running of the cure period, a necessary precondition to terminating the lease; the statute does not do so by its terms. Thus before Civil Court can acquire jurisdiction the lease has expired and, under the ruling of
 
 Yellowstone,
 
 it cannot be revived. Troubled by this conceptual problem, unresolved by the language of the amendment, some courts have been reluctant to deny Supreme Court jurisdiction to grant injunctive relief (see, e.g.,
 
 Wilen v Harridge House Assoc.,
 
 94 AD2d 123; cf.
 
 Schuller v D'Angelo,
 
 117 Misc 2d 528). Acknowledging that under the statute the tenant presumably continues in possession after expiration of the lease if he cures within the 10-day period, the courts have been unable to determine by what right or under what terms he did so after the lease had expired.
 

 
 *27
 
 Notwithstanding these problems, the interpretation urged by defendant appears to be precisely what the Legislature intended. The sponsor’s stated purpose for the bill was to permit tenants to remain in possession by curing the violation after the rights of the parties have been adjudicated.
 
 *
 
 Notably, the amendment provides not only for a mandatory stay of removal but also provides that the tenant shall have an opportunity to cure. Although it makes no provision for reviving the lease, this omission was not unanticipated. The correspondence in the Governor’s bill jacket indicates that the legislation was opposed by some objectors for just this reason (see Letter of Counsel for New York State Builders Association, Inc., dated July 19, 1982). Moreover, if the legislation was not intended to authorize the continuation of the lease, the amendment was unnecessary because existing BPAPL 753 (subd 1) grants Civil Court the discretion to stay removal proceedings while the tenant relocates, not for just 10 days, but for six months. Unless the Legislature intended the tenancy to continue the amendment is surplusage. Thus, although the lease may contain a conditional limitation which permits it to be terminated if the tenant fails to cure, we interpret the statute as impressing its terms on residential leases and, in effect, authorizing Civil Court at the conclusion of summary proceedings to impose a permanent injunction in favor of the tenant barring forfeiture of the lease for the violation in dispute if the tenant cures within 10 days. Under this interpretation the statute would necessarily protect against any other losses incident to forfeiture, including in this case, the loss of plaintiff’s stock in the cooperative which could result from the termination of his lease. To this extent the statute limits our holding in
 
 First Nat. Stores v Yellowstone Shopping Center
 
 (21 NY2d 630,
 
 supra).
 

 
 *28
 
 There are sound policy reasons for interpreting the statute in this way. Civil Court has jurisdiction of landlord tenant disputes (see CCA 204) and when it can decide the dispute, as in this case, it is desirable that it do so
 
 (Lun Far Co. v Aylesbury Assoc.,
 
 40 AD2d 794).
 
 Yellowstone
 
 injunctions have impaired the effectiveness of summary proceedings, however, by enabling tenants to go into Supreme Court where delay may be encountered because of crowded calendars and the pretrial proceedings available in plenary actions. Moreover, if the landlord prevails in Supreme Court, he must still go into Civil Court to evict the tenant. Under the amended statute the tenant’s claims may properly be alleged as defenses to the summary proceedings and complete relief may be obtained in Civil Court. The procedure adopted is expeditious and it permits both parties to avoid the expense and duplication of effort involved in proceeding in two courts.
 

 The rationale of our decision necessarily presumes that Civil Court can grant full relief and that the tenant will be unable to make the necessary showing to invoke the equitable powers of Supreme Court. If the tenant is unable to obtain complete relief in Civil Court, then the jurisdiction of Supreme Court is still available (see
 
 Wilen v Harridge House Assoc.,
 
 94 AD2d 123,
 
 supra).
 
 The Judges of the Appellate Division differed on whether this violation could be cured in 10 days and thus whether the tenant could proceed in Supreme Court. That was a matter which had not been presented to Special Term for the simple reason that the statute had not yet been enacted when the case was submitted to it. The complaint does not contain any allegation concerning the time or the arrangements necessary to cure; plaintiff alleges only that he has been seeing a few patients on an intermittent basis. It is not possible, therefore, to determine whether the statute permits the parties to obtain complete relief in Civil Court thus requiring vacatur of the preliminary injunction and dismissal of the complaint.
 

 Plaintiff objects to the amendment being considered for the first time by the Appellate Division. It is settled law, however, that a court applies the law as it exists at the time of appeal, not as it existed at the time of the original
 
 *29
 
 determination
 
 (Mayer v City Rent Agency,
 
 46 NY2d 139, 149;
 
 Kelly v Long Is. Light. Co.,
 
 31 NY2d 25, 29;
 
 Matter of Tartaglia v McLaughlin,
 
 297 NY 419, 424;
 
 Quaker Oats Co. v City of New York,
 
 295 NY 527, 536) and new questions of law may be raised for the first time on appeal if they could not have been presented to the trial court
 
 (Telaro v Telaro,
 
 25 NY2d 433, 439; Cohen and Karger, Powers of the New York Court of Appeals [rev ed], §§ 161, 162). That is the case here because the statute had not been enacted at the time of submission. The amended statute should be applied to this appeal but because the facts have not been developed, we reverse and remit the matter to the Supreme Court for further proceedings (see
 
 Gilpin v Mutual Life Ins. Co.,
 
 299 NY 253, 263; Cohen and Karger, Powers of the New York Court of Appeals [rev ed], § 168).
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, the certified question answered in the negative and the matter remitted to Supreme Court for further proceedings.
 

 Chief Judge Cooke and Judges Jasen, Jones, Wacht-ler, Meyer and Kaye concur.
 

 Order reversed, with costs, question certified answered in the negative and case remitted to Supreme Court, New York County, for further proceedings in accordance with the opinion herein.
 

 *
 

 The Memorandum of Senator Leon Bogues was as follows: “Real Property Actions and Proceedings Law: § 753. This bill provides for a ten day stay before the court shall issue a warrant upon a claim that the tenant or lessee has breached a provision of the lease. The cause of the breach may, for various reasons, be temporary in nature correctable within the ten day period. This bill which deals only with residential tenants will allow a cure of a breach of the lease after a determination is made that a breach actually exists. Many tenants have the reasonable expectation that they will have an opportunity to cure once they have been advised by the court that, in fact, they have breached the lease provision. Under existing law, there is no such opportunity.” (NY Legis Ann, 1982, p 280.)