OPINION OF THE COURT
Edward J. Greenfield, J.
The obstinate refusal by a Family Court Judge to honor the mandate of this court has resulted in a motion to punish the Family Court Judge and the defendant wife for contempt and has brought to light a most unseemly and unfortunate intracourt conflict. This motion, together with pending motions to consolidate and for counsel fees, are joined together for disposition.
The controversy arises from an acrimonious marital dispute between the Youngs, who had been married for 12 years, and had a 10-year-old daughter. The wife, Milagros Young, had *528 commenced a support proceeding against her husband John Young in the Family Court. The husband thereupon brought this action in the Supreme Court for a divorce, and for a declaration of the rights of the parties with respect to the custody and support of their minor child and as to the possession and control of their cooperative apartment.
Since only the Supreme Court had the power to grant full relief to all the parties as to status, custody, and equitable remedies, the husband moved by order to show cause to remove the Family Court actioji and consolidate it with the action he had commenced in the Supreme Court, pursuant to CPLR 325, 326, and 602. On the return date of the motion at Special Term, Part I, by order of this court, the wife, her agents and representatives, and the Family Court of the City of New York were stayed from taking any and all further steps or proceedings in the Family Court action pending the hearing of the motion. A written order to that effect was signed by this court.
Some four days later, when a scheduled support hearing appeared on the calendar of the Family Court, despite this court’s order staying all proceedings, the Family Court Jhdge deliberately refused to recognize the order of this court as valid, challenged its authority, and the husband’s attorneys having declined to go forward in the face of the stay, the Family Court Judge proceeded with an inquest.
Plaintiff then moved by order to show cause and later a supplemental order to show cause to hold the defendant and the Family Court Judge in contempt pursuant to Judiciary Law § 753 and requesting sanctions, including civil imprisonment and reasonable attorney’s fees.
The Family Court Judge, in her short-form order, states that she held an inquest "after presentation of a supposed order staying the Family Court’s action, which is not from any Appellate Court” and concluded: "Opinion to follow on the subject of the Supreme Court’s inability to stay this court’s action on a petition for the support of a child which was filed and marked final in this court prior to any petition beginning in the state Supreme Court, that Court not having reached any final support decision on the action before it.”
This was followed up by an opinion in which the Family Court Judge held that the order of the Supreme Court was invalid, her theory being that the Family Court has coordinate jurisdiction with the Supreme Court in support proceed *529 ings, and hence that this court could not stay an action in Family Court, or issue orders to the Family Court, which she contends only an appellate court can do. The opinion goes on to state that the "only possible time” that the Supreme Court can stay a Family Court matter is in the context of a CPLR article 78 proceeding in which the Family Court has been made a party. Even then, she believes, the Supreme Court could not issue a writ of prohibition against the Family Court, since it was not acting or threatening to act beyond its jurisdiction.
The sole authority relied upon for this startling opinion and its strange view of the relative positions and relationships of the courts is Matter of Ardis S v Sanford S (88 Misc 2d 724 [Fam Ct, Kings County 1976]) in which another Family Court Judge, without appellate review or approval, proclaimed the independence of his court, and urged a "hands off” stance.
It should be unnecessary for this court to comment at length on the overbroad and wrongheaded opinions of the Family Court Judges here and in Ardis S (supra). It should be sufficient to note that the stay granted by this court as an incident to consolidation and removal involves neither an appellate review nor any kind of article 78 proceeding. The Family Court is not, as claimed in Ardis S (supra, p 726) "the only court in which exclusive original jurisdiction has been vested by statute”, when Family Court Act § 812 expressly gives it concurrent jurisdiction. The procedures there providing for family offense proceedings have nothing to do, of course, with such matrimonial issues as support, custody and status. The Judge in Ardis S bemoaned the "split jurisdiction” between the Family Court and the Supreme Court, ignoring the fact that the so-called split could be obviated by consolidation of all proceedings in a single court.
The NY Constitution, article VI, § 7 provides:
"a. The supreme court shall have general original jurisdiction in law and equity * * *
"c. * * * the legislature may provide that another court shall also have jurisdiction”.
The Supreme Court cannot be constitutionally ousted from its power over all classes of actions and proceedings, even if a lower court is given concurrent jurisdiction. (Matter of Seitz v Drogheo, 21 NY2d 181.) While a support proceeding may be commenced in the Family Court, if any party chooses to litigate in the Supreme Court, "that court is empowered to *530 'transfer any action or proceeding, except one over which it shall have exclusive jurisdiction * * * to any other court having jurisdiction of the subject matter’ (N. Y. Const., art. VI, § 19, subd. a)”. (Kagen v Kagen, 21 NY2d 532, 538.)
CPLR 325 (b) expressly permits the Supreme Court, as a court of unlimited jurisdiction, to remove to itself an action then pending in a court of limited jurisdiction where the lower court does not have the jurisdiction to grant all the relief to which the parties are entitled. When a party seeks to remove such an action to the court of unlimited jurisdiction, CPLR 326 (a) provides that the court to which removal is sought (the Supreme Court) may make an order to stay proceedings pending consideration of the removal application. All subsequent proceedings are to take place only in the court to which the action is removed. Once an action has been transferred to another court, the original court has no further jurisdiction with respect to any subsequent motions or applications. (Mather v Ginsroe, Inc., 45 Misc 2d 674, 677; Komorowski v Smith, 74 AD2d 841.)
A stay pursuant to CPLR 326 is to be distinguished from the general stay as provided for in CPLR 2201. Those stays are issued in the selfsame court where the action is pending. As the Practice Commentaries to CPLR 2201 make clear,
"[t]here are many 'stays’ authorized in civil practice [including] * * *
"a stay in conjunction with the removal of a case from one New York court to another. CPLR 326. This one even allows the transferee court to stay proceedings in the court from which the transfer is being made, thus affixing the 'stay’ label to what is in essence an injunction by one court suspending proceedings in another.” (Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C2201:4, p 4.)
It should be noted that in innumerable cases this court invokes its power pending a removal application to stay all proceedings of a lower court. Thus, for example, landlord-tenant proceedings in the Civil Court are often stayed when one of the parties seeks to invoke the equitable jurisdiction of the Supreme Court. Hundreds, if not thousands of stays of lower court proceedings have been issued by the Supreme Court in Yellowstone proceedings, following First Natl. Stores v Yellowstone Shopping Center (21 NY2d 630; cf. Post v 120 E. End Ave. Corp., 62 NY2d 19, 28).
The reliance by the Family Court in its opinion on Matter of *531 Fischman v Fischman (51 AD2d 725) and Denzer v Denzer (56 AD2d 601) is misplaced. In neither of those cases does it appear that there had been an application to remove the Family Court proceeding to the Supreme Court together with a stay. The mere institution of a later Supreme Court action without more of course does not divest the Family Court of jurisdiction to proceed. But that is not the case here.
The only possible pretext for the claim that the Family Court proceedings cannot be interfered with by the Supreme Court, a ground not mentioned in the Family Court opinion, appears in Family Court Act §§ 115 and 411. Those sections purport to give the Family Court "exclusive original jurisdiction” over support proceedings. But the statutory language is not as sweeping as it seems. The Court of Appeals has held that despite the statutory grant of seeming exclusivity, the Supreme Court is not ousted of jurisdiction, and has concurrent jurisdiction over support proceedings. (Kagen v Kagen, 21 NY2d 532, 537, supra.) The constitutional grant of powers to the Family Court "in no way limit or impair the jurisdiction of the supreme court”. (NY Const, art VI, § 13 [d].) Hence there is concurrent jurisdiction, and if such a proceeding should be commenced in the Family Court, the Supreme Court is then empowered to transfer such action or proceeding, in its discretion. (NY Const, art VI, § 19 [a]; Kagen v Kagen, supra, p 538.) As the Practice Commentary to Family Court Act, article 4, § 411 notes:
"the imposing phrase 'exclusive original jurisdiction,’ which appears in this and other Articles of the Family Court Act, is merely precatory and not mandatory, since the Supreme Court has constitutionally guaranteed concurrent jurisdiction over any matter within the jurisdiction of the Family Court.
"The Supreme Court can remove the support action commenced in the Family Court and consolidate it with the pending matrimonial action when the issues are the same in both proceedings. [See, e.g., Hessen v. Hessen, 37 A. D. 2d 778 * * *]”. (Besharov, McKinney’s Cons Laws of NY, Book 29A, pp 12-13.)
There is a statutory provision limiting stays set forth in the Uniform Support of Dependents Law (Domestic Relations Law § 41-a). It provides:
"Proceedings not to be stayed
"No pending and undetermined action for divorce, separation, annulment, or dissolution or habeas corpus custody *532 proceeding instituted by the respondent shall operate to stay any proceeding under this act against such respondent for support of a dependent.” (Domestic Relations Law § 41-a.)
Lest anyone be misled, two things must be noted about this provision. First, by its terms, the statute provides merely that the bringing of a matrimonial action does not, in and of itself, operate automatically to stay or interfere with a pending support proceeding. It in no way limits the power of the Supreme Court, pursuant to CPLR 325 and 326 to entertain a motion to consolidate or remove such a proceeding, and to issue an order staying proceedings until the question of removal is decided.
Thus, the unilateral action of a party in bringing on a lawsuit does not avail to halt the support proceedings. It requires the active intervention of a Judge who, upon hearing the motion, can exercise judicial discretion to stay the proceedings. Second, the provisions of Domestic Relations Law § 41-a are limited, by its terms, to support proceedings "under this act”, i.e., the Uniform Support of Dependents Law (Domestic Relations Law art 3-A). That act applies only to cases where the parties are residents of different counties or different States. (Domestic Relations Law § 35.) The parties here were not so domiciled, and the instant proceeding was brought, not under article 3-A, but pursuant to Family Court Act article 4.
The Family Court Act contains no limitation on this court’s power to stay a Family Court support proceeding. Since the CPLR governs civil judicial proceedings "in all courts of the state and before all judges, except where the procedure is regulated by inconsistent statute” (CPLR 101), the power of this court to stay proceedings of the Family Court is beyond dispute. (CPLR 326 [a].) Further, a finding in an action brought in the Supreme Court is binding on courts of limited jurisdiction, including the Family Court. "Therefore, even though both courts may have concurrent authority over an issue, a Supreme Court finding as to a factual matter becomes the law of the case and accordingly binds the lower court.” (12 Zett-Edmonds-Buttrey-Kaufman, NY Civ Prac § 3.01, at 3-9— 3-10.)
It is astounding, therefore, for a Family Court Judge to take the position that the Supreme Court is without power to stay proceedings in her court pending an application for removal and to issue a defiant challenge of this court’s order by *533 proceeding to take an inquest against the husband, when his attorneys stated they felt obligated to honor the order of this court suspending matters in the Family Court.
For a court system to operate harmoniously, and with a minimum of friction, a Judge of one court should make a conscientious effort, when possible, to give heed to the requirements of a sister court, and to defer graciously when the law commands, rather than make a claim of naked (and nonexistent) power. There was no pressing reason why the Family Court Judge had to proceed in precipitate fashion, rather than honoring the stay and awaiting this court’s determination on the husband’s motion to remove and consolidate. If any pressing reason existed, a simple communication advising this court about it could have obviated the problem. Efficient court administration calls for attempts to harmonize, rather than exacerbate differences between component units of the court structure.
Clearly, the Family Court Judge willfully violated the mandate of this court and disregarded the stay. A stay is an order of the court, and its willful violation is contempt, and can be punished as such. (Cornell v T.V. Dev. Corp., 50 Misc 2d 422.) However, the question of imposition of sanctions for contempt is always within the discretion of the court (Dickson v Ferullo, 96 AD2d 745). A court will recognize that an offense amounting to an "honest mistake” may not constitute grounds for imposing sanctions for civil contempt (Matter of Sentry Armored Courier Corp. v New York City Off-Track Betting Corp., 75 AD2d 344).
This court is mindful that the function of a judicial officer demands independence of opinion and expression, and that a holding that a Judge may be personally liable for applying the law as she understood it, stubbornly albeit mistakenly, would seriously impair the independence of the judiciary. Undoubtedly, there may be judicial conduct so egregious and openly contumacious of a proper court order as to require contempt sanctions, but a mistaken understanding of the controlling law should not be the occasion for the extraordinary imposition of such sanctions. This is such a case. For these reasons, although the Family Court Judge acted in flagrant disregard of the order of this court, discretion will be exercised to deny the motion to hold the Family Court Judge in contempt.
The motion to hold defendant Milagros Young in contempt is similarly denied. Although defendant violated the order of *534 this court, it is apparent that she relied upon the decision of another court of competent jurisdiction. This unusual situation does not call for imposition of contempt sanctions.
The motion for removal and consolidation of the Family Court action previously denied by another Justice of this court and subsequently vacated upon reargument and referred to this court is granted. Defendant does not dispute that the totality of relief requested by the parties can only be granted in this court. The order of the Family Court promulgated in violation of this court’s stay order will be regarded as a nullity.
The court notes that inasmuch as a Judge of a court of record was named as a person subject to possible sanctions because of her official actions in the contempt motion, the Attorney-General of the State of New York appeared for her and submitted papers in her defense. That may have been entirely appropriate. (Public Officers Law § 17.) However, it was inappropriate and impermissible for the Attorney-General’s office to go beyond the attempt to ward off sanctions, and to adopt the Family Court Judge’s position that in an intracourt dispute, the Family Court’s claim of unrestricted power was correct, and that despite the clear constitutional, statutory and case law on the subject, the Supreme Court was without power to act. When two components of the judicial branch of State Government are in conflict, it ill behooves the official representative of the State to take sides, and become the champion of one of its agencies over the other. It was correct to defend the Judge, but wrong to espouse her position.