OPINION OF THE COURT
Bruce McM. Wright, J.
Defendants move for an order pursuant to CPLR 3212 directing that summary judgment be entered in their favor on their first counterclaim, directing that they have possession of apartment 12-A at 244 Madison Avenue, Manhattan; that a warrant of eviction be issued to effectuate possession; that defendants have a money judgment awarding to them use and occupancy in an amount to be determined, with respect to their second counterclaim; that defendants have an award of counsel fees in an amount to be determined; and that such other causes of action as remain be severed.
*863 The defendant 244 Madison Realty Corp. owns the cooperative apartment house at the address of its title. Plaintiff owns of record the shares allocated to apartment 12-A. The third-party defendant, Richard Grubman, is the "unapproved subtenant of the apartment,” who is in default in answering process served upon him.
The law of this case has been established by prior proceedings. Plaintiff commenced this action by serving with his summons and complaint an order to show cause seeking to enjoin the defendants from terminating his proprietary lease for the disputed apartment. His request for an interim stay pending the hearing of the motion, so as to toll the running of a notice To cure, instructing him to remove an unauthorized subtenant, was denied. Plaintiff nevertheless did not remove the subtenant and a notice of termination was served and the lease was terminated on December 24, 1984.
Under date of February 6, 1985, plaintiff’s application for a Yellowstone preliminary injunction was denied, since there was no tolling of the cure period and the lease was terminated. It was held that: "Plaintiff’s failure to obtain a toll of the curative period divests this court of its power to grant a preliminary injunction”.
Thereafter, plaintiff applied for reargument. That motion was denied.
When plaintiff purchased the shares allocated to apartment 12-B, it was vacant and adjacent to one he already owned. In exercising his right to purchase at an insider’s price, he certified that he intended to combine both 12-A and 12-B and personally occupy the resulting larger unit. Three months after he certified as required, plaintiff sublet apartment 12-B. The proprietary lease for apartment 12-B specifically provides that subletting is subject to prior consent of the cooperative’s board of directors. Any breach of subletting conditions permits the lessor-corporation to serve a notice of termination, if, after notice to cure, no cure is effected by removal of the unauthorized person.
It appears that the plaintiff sublet in July 1984 and only later, in August, did he ask the board of directors for permission. The board denied the tardy application, since plaintiff had violated sublet guidelines and had not occupied the joined apartment for at least one year prior to subletting, because it appeared to the board that plaintiff desired only to profiteer on his investment in the two apartments and for other rea *864 sons. Instead of seeking permission from the shareholders directly, as he had a right to do under his proprietary lease, plaintiff is said to have moved to New Jersey, while allowing the subtenant to continue residing in the apartment.
By reason of all that has gone before, and on the documents annexed to the moving papers, defendants press their motion for summary judgment as to their entitlement to have possession of the apartment.
Confronted with the request by defendants for such drastic relief, the plaintiff cross-moved for permission to renew his application for a Yellowstone injunction to enjoin the running of the cure period in his proprietary lease beyond the 10-day period contained in RPAPL 753 (4); and awarding to plaintiff summary judgment against Richard Grubman, the third-party defendant (the subtenant).
Subsequently, plaintiff withdrew that portion of the cross motion which sought renewal of his application for a Yellowstone injunction, stating that any alleged breach resulting from plaintiffs sublet to third-party defendant Grubman had been cured by the termination of Mr. Grubman’s tenancy.
The same reasons that compelled denial of the original motion hold fast here in their applicability. In effect, the plaintiff is asking that the court reactivate the terminated lease and give it new life. He wants judgment decreeing that he be awarded possession of the apartment.
In support of his argument that defendant’s motion for summary judgment must be denied, plaintiff swears that he had permission from the sponsor of the cooperative. He fails to name any person to whom he spoke and apparently, there is no writing to substantiate such a claim. It is therefore regarded as an unworthy and post litem motam contention.
Plaintiff accuses the board of directors as being hostile and singling him out for selective denial. He states, without evidentiary particulars, that the board that rejected his application for leave to sublet, nevertheless approved sublet applications of other shareholders. His penultimate contention is that the board was arbitrary and capricious in denying him permission to do what he had already done. Such claims seem naked and conclusory in their effort to focus blame on the board although plaintiff clearly violated the terms of his proprietary lease by subletting the apartment before first applying to the board for permission.
Plaintiff addresses in his memorandum of law his entitle *865 ment to summary judgment against the third-party defendant, if summary relief is awarded to defendants.
In effect, plaintiff asks for the kind of relief in this court that he could have had in the Civil Court, had defendant 244 Madison Realty Corp. elected to commence a holdover proceeding against him. One of the problems with this case is that, originally, plaintiff presented an order to show cause that provided for staying termination of the plaintiff’s proprietary lease and not for a stay of the running of the notice to cure. At some point, it appears that someone inked in the words "The Notice To Cure dated November 20, 1984 is tolled.” But that appears to be crossed out as well. Counsel’s affirmation suggests that Justice Parness misconstrued Post v 120 E. End Ave. Corp. (62 NY2d 19), and that the defendants "misrepresented” Post in citing it to this court. And, the affirmation continues, the language relied upon by defendants is really a statement of what the law was prior to amendment of RPAPL 753 (4). However, it appears that the change in the law affected disputes in the Civil Court, where, even if a tenant lost, he could still have an additional period of time within which to cure.
Quoting from Post (supra, pp 22-23), the court says at the very outset that: "The section [RPAPL 753 (4)] applies to holdover tenants in residential dwellings in New York City and the new subdivision 4 provides: 'In the event that such proceeding [a summary proceeding to recover possession] is based upon a claim that the tenant or lessee has breached a provision of the lease, the [Civil] court shall grant a ten day stay of the issuance of the warrant [to remove], during which time the respondent [tenant] may correct such breach.’ ”
Significantly, then, by construction of the Court of Appeals itself, the statute refers to "holdover tenants” and "a summary proceeding to recover possession”. And the Civil Court is specifically mentioned as the grantor of the additional time to cure. The present action is not a summary proceeding, nor has there been any holdover proceeding.
Contrary to plaintiff’s contention, RPAPL 753 (4) does not give to a tenant an automatic 10-day period within which to cure a default or breach, where a tenant has commenced an affirmative action in the Supreme Court. This is especially true where, as here, the plaintiff has elected to proceed in the Supreme Court, instead of waiting until the landlord commenced a holdover proceeding in the Civil Court.
*866 Plaintiff, having made an election of forums, now finds that it is too late to advantage himself of the Civil Court and the mercies of RPAPL 753 (4), and its 10-day grace period for cure. Nor has the plaintiff ever made a timely argument that the 10-day time to cure was impossible and that he needed more time than that. It is idle for plaintiff to quarrel here that Mr. Justice Parness misconstrued and misapplied Post v 120 E. End Ave. Corp. (62 NY2d 19, supra). Plaintiff himself is a member of the Bar, a hard and persuasive negotiator (as one may gather from his success with the sponsor of the co-op) and he must have been aware of the necessity to seek reargument of the order to show cause.
For whatever reason, Justice Parness struck the language that would have stayed 244 Madison Realty Corp. from terminating plaintiff’s proprietary lease and the stay that would have tolled the notice to cure. In the meanwhile, with no tolling of the cure period and nothing to inhibit a notice to terminate, when the cure period passed without a cure, the lease was terminated. It was heedless of plaintiff to assume that his lease could survive under circumstances where he admits the improper sublease and its execution without the prior written consent of the board of directors.
As noted, the attempt to substitute a consent by the sponsor, in the vague, conclusory and unsubstantiated manner that that is offered, is unavailing.
The 10-day additional time within which to effect a cure of a breach provided by RPAPL 753 (4) is obviously meant to be relevant to Civil Court proceedings. The stay in Supreme Court proceedings results where it is sought and granted by way of preliminary relief to keep the period from expiring and resulting in precisely the kind of dilemma in which the plaintiff now finds himself. To grant the plaintiff the kind of relief he seeks now, this court would be placed in the posture of reviving a dead lease concededly breached. Had the plaintiff simply waited for the landlord to commence holdover proceedings, he would then have had advantage of RPAPL 753 (4).
It is ironic that, after expiration of the cure period, and after termination of the lease, the subtenant vacated the apartment. But the fact remains that plaintiff has made this a landlord-tenant case in the forum of his own selection. While enjoying none of the advantages of a summary holdover proceeding and the remedial thrust of RPAPL 753 (4) he suffers the disadvantages of being a loser under his propri *867 etary lease terms that make him liable for the winner’s expenses and legal fees.
Plaintiffs proprietary lease defines a contract between him and 244 Madison Realty Corp. and he is bound by its terms. By reason of the time sequences embraced by the notice to cure and the notice of termination, plaintiff finds himself hapless to defend against summary judgment. The expiration of the cure period that justified the notice of termination makes it impossible for the plaintiff to support his request for preliminary injunctive relief. It is now hornbook learning that, in order to win preliminary injunctive relief, a supplicant must meet three preconditions and show a likelihood of success on the merits; that he will suffer irreparable harm, absent the granting of the preliminary request; and that a balancing of the equities favors his arguments.
Plaintiff meets none of these prerequisites and the penalty for such a deficiency is denial of relief (Chrysler Realty Corp. v Urban Investing Corp., 100 AD2d 921, 922; Shellabarger v Onondaga County Water Auth., 105 AD2d 1134). And, in addition to being deprived of the mercies of RPAPL 735 (4) plaintiff becomes victimized by the Yellowstone ghost that haunts this kind of litigation, for, on the last page of First Natl. Stores v Yellowstone Shopping Center (21 NY2d 630, 638), courts are warned against applying tender mercies in the place and stead of the law’s policy: "Our guide must be the precedents prevailing since courts of equity were established in this State. Stability of contract obligations must not be undermined by judicial sympathy. ”
Thus, no legally proper ground can be discovered to save the plaintiff’s complaint. In many crucial places, plaintiff’s allegations are conclusory and naked of evidentiary detail. For example, for him to claim permission given by the sponsor, without naming the sponsor and saying what was said when and without supplying an affidavit from his informant, is grossly inadequate, for, after all, he is confronted by a motion for summary judgment. Such a motion triggers a trial on paper, it is, indeed, "the procedural equivalent of a trial” (Falk v Goodman, 7 NY2d 87, 91), and he who stints in producing all of his evidence, does so at the peril of his cause. And: " 'Bald conclusory assertions, even if believable, are not enough [to defeat summary judgment].’ ” (Ehrlich v American Moninger Greenhouse Mfg. Corp., 26 NY2d 255, 259.)
If it is an issue of credibility plaintiff seeks to create, that, *868 too, must fail, for: "On a motion for summary judgment the court is not to determine credibility, but whether there exists a factual issue, or if arguably there is a genuine issue of fact [citing cases].” (Capelin Assoc. v Globe Mfg. Corp., 34 NY2d 338, 341.)
Nothing is found to save plaintiffs complaint, other than the prohibited judicial sympathy.
Defendants are entitled to have the complaint dismissed with costs.
DEFENDANT’S COUNTERCLAIMS
There are four counterclaims presented. Defendant 244 Madison Realty Corp. here moves for summary judgment on its first, second and fourth counterclaims.
For the reasons stated above, defendant is entitled to summary judgment on the first counterclaim, awarding possession of the apartment to the corporation.
Defendant’s second counterclaim seeks use and occupancy from plaintiff from December 25, 1984, the date after the lease was terminated, until the date that possession is surrendered. Defendant alleges a fair market rental of the apartment of $1,500 per month. No expert appraisal is offered to buttress that otherwise unsupported conclusion. Thus, summary judgment is granted to defendant on this counterclaim on the issue of liability, and there shall be an assessment of damages.
Defendant does not here move for summary judgment on the third counterclaim; thus, that counterclaim shall be severed.
Summary judgment is also granted to defendant on its fourth counterclaim for attorney’s fees and other expenses incurred in this action, on the issue of plaintiffs liability. The assessment that will be held will determine the damages that defendant is entitled to on its second and fourth counterclaims.
(On Motion for Reargument, September 12, 1985)
Plaintiff applied for a so-called Yellowstone injunction (First Natl. Stores v Yellowstone Shopping Center, 21 NY2d 630), to prevent termination of his proprietary lease to apartment 12-A, 244 Madison Avenue in Manhattan. His order to show cause is dated December 5, 1984. It contained no provision for a stay of the running of the cure period for the alleged *869 improper subletting. A notice of termination was served on December 19, 1984 and the lease was terminated on December 24, 1984. By reason of that chronology of events plaintiffs application for an injunction was denied and he became the victim of his failure to toll the running of the cure period, or to enjoin termination. On the basis of that failure and the termination of the lease and on the authority of Health N Sports v Providence Capitol Realty Corp. (75 AD2d 884), it was felt that the court’s authority and power to grant a preliminary injunction was divested.
Plaintiff now moves for leave to reargue, contending that denial of the sought injunctive relief was error and derived from an incorrect interpretation of law.
At the heart of the application for reargument is the contention that Mr. Justice Parness struck the provision in the order to show cause which accompanied commencement of this action, that provided for a stay preventing defendants from terminating plaintiff’s lease. Plaintiff argues here, that defendants misrepresented to this court the true meaning of Post v 120 E. End Ave. Corp. (62 NY2d 19). The Court of Appeals, it is said, in saying that (p 25): "Long before the dispute was legally resolved, the lease terminated because of the tenant’s failure to cure or toll the cure period”, meant that the court was powerless to revive the expired lease, but referred to a period prior to the amendment of RPAPL 753 (4).
Defendants argue that the plaintiff, by coming to the Supreme Court, rather than waiting for summary proceedings in the Civil Court, gambled and lost.
Post (supra) held, among other things, that the amended statute (RPAPL 753 [4]) does not, by its terms, prevent expiration of a lease by tolling the running of the cure period (p 26), nor is there any provision for reviving an expired lease or a terminated one. Nevertheless, as Post construed the amended RPAPL 753 (4), the Court of Appeals stated, at page 26, that: "RPAPL 753 (subd 4) provides that in a summary proceeding in Civil Court the court shall, after adjudicating the merits, grant a losing tenant a 10-day period within which to cure the default.”
And, while the Court of Appeals interpreted the statute (as amended) "as impressing its terms on residential leases and, in effect, authorizing Civil Court at the conclusion of summary proceedings to impose a permanent injunction in favor of the tenant barring forfeiture of the lease for the violation in *870 dispute if the tenant cures within 10 days” (Post v 120 E. End Ave. Corp., supra, p 27), the general rule appears to be that, after a lease has expired, it is too late to apply for injunctive relief, as it is when the period to cure has expired. The overall construction placed on Post is that RPAPL 753 (4) is a limitation upon the doctrine laid down in First Natl. Stores v Yellowstone Shopping Center (supra), while favoring the tenant who elects to contest the issue in the Civil Court (see, Asherson v Schuman, 106 AD2d 340, 342 [1st Dept 1984]).
Further, where a Supreme Court plaintiff has failed to show that he does not have an adequate remedy at law, "i.e., that the 10-day period would have been too short for purposes of terminating the subtenancy and thus curing the breach”, or that RPAPL 753 (4) does not offer sufficient protection, he is bereft of cause after a lease has been terminated (Brodsky v 163-35 Ninth Ave. Corp., 103 AD2d 105, 110).
As for plaintiff’s argument that counsel for the defendants promised him that nothing would be done to terminate the lease while the action was pending (without a stay), the short answer is found in CPLR 2104: "An agreement between parties or their attorneys relating to any matter in an action, other than one made between counsel in open court, is not binding upon a party unless it is in a writing subscribed by him or his attorney or reduced to the form of an order and entered.”
A recent construction of the rule is found in Kleinberg v Ambassador Assoc. (64 NY2d 733, 734).
The court fails to perceive the same misapprehension or misinterpretation that plaintiff urges. The original determination, although a short-hand version of what is here written, is nevertheless believed to be a correct interpretation of the law and the authorities relevant here.
Accordingly, the motion for reargument is denied.