■ In the Matter of IDANT LABORATORIES et al., Petitioners, v DEPARTMENT OF HEALTH OF THE CITY OF NEW YORK et al., Respondents. [643 NYS2d 539] —Petition, in this proceeding pursuant to CPLR article 78, transferred to this Court by order of the Supreme Court, New York County (Ira Gammerman, J.), entered January 4, 1995, unanimously granted, and the determination of respondent Department of Health of the City of New York, dated December 9, 1993, which continued a cease

and desist order dated July 26, 1993 prohibiting petitioners from analyzing semen samples, and which denied petitioners' application for a clinical laboratory permit, Qualification Area Code 38A, unanimously annulled, on the law, without costs.

Since the citation of petitioners for the violations that prompted respondent to issue its cease and desist order, the Public Health Law has been amended to confer exclusive authority to license and regulate clinical laboratories on the New York State Department of Health (L 1993, ch 436; *see, Matter of Daxor Corp. v State of N. Y. Dept. of Health,* 227 AD2d 337 [decided herewith]). This appeal is not thereby rendered moot because the order determining that petitioners violated City regulations, if upheld, might have an adverse effect on their present, or future, certificate or permit applications (*see, Matter of Mu Ch. of Delta Kappa Epsilon v Colgate Univ.,* 176 AD2d 11, 13).

As explained in its brief, respondent's cease and desist order is predicated upon its interpretation of a "regulation which required that laboratory technicians be qualified in the specialty area in which he or she [*sic*] worked (Health Code, § 13.13)". Respondent contends that "its determination that those who perform semen analysis should be qualified in the area of hematology was a rational and proper interpretation of its own regulations." Respondent concludes that "the City's long term adherence to its reading of [Public Health Law § 574 (former [2])] and the rationale behind it should be recognized by the court and its interpretation confirmed."

Respondent cites *Matter of Memorial Hosp. v Axelrod* (68 NY2d 958, 960) for the source and scope of its authority and the deference owed to its interpretation of the statute from which that authority is derived: "The Department of Health, like all administrative agencies, 'is clothed with those powers expressly conferred by its authorizing statute, as well as those required by necessary implication'" (quoting *Matter of City of New York v State of N. Y. Commn. on Cable Tel.,* 47 NY2d 89, 92). Respondent argues that it is rational to require someone who prepares semen samples for microscopic analysis to have a New York City certificate of qualification in hematology even though a histology technician, who prepares blood samples for similar analysis, is not required to possess such a certificate, as conceded in respondent's brief. It is respondent's contention that its authority to regulate semen analysis is derived from Public Health Law § 574 (former [2]) (repealed by L 1993, ch 436, § 1).

Petitioners, in their reply brief, note, "Nowhere in the City

Administrative Code's definition of a clinical laboratory does it include any mention of semen analysis." Therefore, they argue, the City's regulation of this function is preempted by the State which, pursuant to article 43-B of the Public Health Law (L 1990, ch 589, § 1), has authority to regulate storage facilities and tissue banks. The term "tissue" is expressly defined to include "spermatozoon" (Public Health Law § 4360 [10]), and the New York State Commissioner of Health is granted power to revoke, suspend, limit or annul the license to operate such a facility after a hearing (Public Health Law § 4366), with injunctive power vested in the Supreme Court (Public Health Law § 4366 [3]). Petitioners also rely on a 1988 ruling by an Administrative Law Judge that "a Certificate of Qualification in urinalysis is required in order for a facility to perform semen analysis." Therefore, they conclude, respondent City Department of Health is without authority to regulate a semen bank and, in any event, respondent is estopped by the determination of its Administrative Law Judge from asserting—in the absence of any change in law, regulation or policy—that petitioners are required to have a certificate of qualification in hematology.

The City Department of Health's claim to regulatory authority at the time its subject cease and desist order was issued is premised upon the classification of petitioner's tissue bank as a "clinical laboratory" pursuant to Public Health Law article 5. Even assuming the materiality of the provisions of that article to activities conducted pursuant to article 43-B, the authority of the New York City Department of Health has been abrogated by virtue of the intervening legislation (L 1993, ch 436) and the authority for regulation of clinical laboratories conferred upon the State Department of Health (Public Health Law § 573).

It is incontrovertible that the conflicting interpretation of inconsistent regulations by agencies with overlapping authority is one of the principal reasons motivating the Legislature to pass this measure. The Memorandum of the Legislative Representative of the City of New York in support of the amendment (1993 McKinney's Session Laws of NY, at 2619, 2620) emphasizes: "By eliminating instances of inconsistencies between existing State and City requirements, the standards that need to be followed will be clear to all within the clinical laboratory and blood bank community." Because those engaged in these activities are now subject to State administrative procedures, the amendment is both procedural and remedial in purpose and subject to liberal construction to broaden its salutary effect (*Post v 120 E. End Ave. Corp.*, 62 NY2d 19, 24). Further-

more, it is settled that this Court "applies the law as it exists at the time of appeal, not as it existed at the time of the original determination" (*Post v 120 E. End Ave. Corp., supra*, at 28-29). Therefore, while we find merit to petitioners' contentions that the State has preempted the field, that the specific regulation on which respondent bases its requirement for a certificate of qualification is unconstitutionally vague and that, in any event, the agency should be estopped from imposing a requirement at variance with a previous administrative determination binding upon petitioners, it is dispositive that the statutory basis of respondent's authority in this area has been abolished by legislative enactment. In the absence of any statutory basis to act in respect to the regulation of a tissue bank, the authority of the New York City Department of Health is neither expressly conferred nor necessarily inferable (*Matter of Memorial Hosp. v Axelrod, supra*, at 960).

The legislative purpose to eliminate "duplication" and "inconsistencies between existing State and City requirements" (1993 McKinney's Session Laws of NY, *op. cit.*, at 2620) is not advanced by the evaluation of petitioners' fitness to operate their tissue bank by reference to obsolete criteria. Therefore, respondent's assertion that petitioners' lack of compliance with the defunct City regulatory scheme, if established, "may be considered by the State Department of Health on any application * * * for licensure" is entirely dependent on the continued viability of the City standards.

Even if this Court accepts respondent's classification of petitioners' tissue bank as a "clinical laboratory", the subject City regulations, allegedly violated by petitioners, do not appear to be "related to the control, prevention or reporting of diseases" or the "abatement of public health nuisances" (Public Health Law § 580 [3]). Under the present statutory framework, the operative criterion is therefore whether the New York State Department of Health has adopted any "rules or regulations applicable only to or in the city of New York which are designed to address special needs or circumstances existing in such city" (Public Health Law § 576 [7]) and, if so, whether petitioners are in violation of those rules or regulations. Accordingly, before judicial review of this matter is undertaken, it is incumbent upon the State Department of Health to determine whether a tissue bank is simultaneously to be construed as a "clinical laboratory" under the law and, if so, whether any basis exists for suspension or termination of any certificate or permit currently held by petitioners (Public Health Law § 577 [3]; § 4366; *Matter of Daxor Corp. v State of*

*N. Y. Dept. of Health, supra*). Concur—Sullivan, J. P., Ellerin, Rubin, Kupferman and Williams, JJ.