OPINION OF THE COURT
Memorandum.
Order unanimously affirmed without costs.
This holdover summary proceeding, predicated upon breach of a substantial obligation of the tenancy in the form of harboring a dog, is before this court for the second time (see Landmark Props. v Olivo, 5 Misc 3d 18 [App Term, 9th & 10th Jud Dists 2004]). Shortly before the original appeal was heard, tenants found a new home for the dog in question. Nevertheless, we found that a substantial obligation of the tenancy had been *3 ached by tenants’ harboring of the dog, and that the final lent of possession entered in favor of landlord was proper, lowing our affirmance, tenants moved below to vacate the arrant of eviction pursuant to RPAPL 749 (3), citing the evenual removal of the dog as good cause to support vacatur of the warrant. This motion was denied, and tenant Olivo appealed.
Key to tenants’ argument below was a two-month “cure period” granted by the court below in its decision and order issued following the trial. Under the terms of the court’s decision and order, the failure to remove the dog by the end of the two-month period entitled landlord to entry of a final judgment of possession. Landlord did not object to or appeal this “cure period” at the time, and it was not an issue on the prior appeal. It is a central issue on tenant Olivo’s current appeal, however, as tenant Olivo has argued both below and on this appeal that this court’s interim grant of a stay of execution of the warrant, and subsequent grant of a stay, characterized as of “all proceedings,” pending the first appeal, had the effect of tolling the running of the “cure period,” and that therefore the dog was actually removed before the “cure period” expired.
The stays imposed by this court did not operate to toll the running of the “cure period” imposed by the court below following trial. The only statutory provision for a posttermination “cure period” applies to proceedings brought in the City of New York, for which RPAPL 753 (4) provides a mandatory 10-day postjudgment cure period for holdover proceedings involving breach of substantial obligations of the tenancy. If a tenant cures within this period, said tenant’s lease is revived (see Post v 120 E. End Ave. Corp., 62 NY2d 19, 27 [1984]). Elsewhere, the only time available to a residential tenant within which a lease violation may be cured is the time provided in the notice to cure. A termination notice operates to terminate a tenancy if a cure is not effected, and this termination of a tenancy is the basis for a resulting holdover proceeding (see RPAPL 711 [1]; Brodsky v 163-35 Ninth Ave. Corp., 103 AD2d 105 [1984]). Outside the City of New York, the only means to extend the time to cure is injunctive relief (see First Natl. Stores v Yellowstone Shopping Ctr., 21 NY2d 630 [1968] [hereafter Yellowstone]), which relief must be sought within, and must operate to toll, the cure period provided by lease provision or predicate notice (depending upon the type of tenancy at issue) before this period runs and the lease terminates. Otherwise, the courts are powerless to revive the expired lease (see Post, 62 NY2d at 25, 26-27; Yellowstone, 21 NY2d 630 [1968], supra).
*4 Contrary to tenant Olivo’s argument, CPLR 2201’s authti [e]xcept where otherwise prescribed by law,” to grant a proceedings upon such terms as may be just (and which u trial court cited in the decision and order after trial), canno operate to revive a lease. Moreover, in the landlord-tenant context, specific statutes, as well as appellate case law, govern the circumstances of stays and other remedial action. The effect of the decision and order after trial was to improperly seek to revive a lease that had terminated by tenants’ failure to remove the dog within the 30-day predicate notice cure period, as confirmed by the finding of the trial court (affirmed by this court on appeal) that they had, in fact, breached a material obligation of their lease (see generally Post, 62 NY2d at 25).
Nevertheless, tenant Olivo contends upon appeal, as tenants did before the court below, that not only did such a post-trial “cure period” properly exist, its expiration was tolled through this court’s grant of stays as contained in our orders dated February 28, 2003 and April 9, 2003. This latter contention must fail on two grounds. First, although landlord may have acceded to the “cure period” prior to entry of the final judgment at the time it was granted, in effect charting its own course in the litigation (see e.g. J & A Vending v J.A.M. Vending, 303 AD2d 370 [2003]), this court’s orders shall not be interpreted, at the behest of one party, so as to prolong relief that the court below had no power to grant, regardless of the parties’ original accession to it. Second, the interim ex parte relief granted by this court on February 28, 2003 (the last day of the “cure period”), by its terms, had the sole effect of staying execution of the warrant pending appeal, as tenant Olivo’s own order to show cause requested. Contrary to tenant’s present contention, this stay of the warrant did not operate to toll the “cure period,” the request for which was nowhere mentioned in the interim relief sought in the order to show cause. By the time this court granted tenant’s motion and ordered a stay pending appeal on April 9, 2003, the “cure period” had already expired.
In this regard, it must also be noted that although this court’s April 9, 2003 order described tenant Olivo’s original motion as seeking a “stay [of] all proceedings,” the motion did not in fact seek such a broad stay, and the relief recited in the decretal paragraph of this court’s order was merely a grant of “the branch of the motion by tenant-appellant for a stay pending appeal.” The natural effect of such language is to refer the reader *5 to the said branch of the original motion, which, as noted, requested only a stay of execution of the warrant of eviction. The continued presence of the dog, and any effort that tenants were making to find a new home for it, were nowhere mentioned in tenant Olivo’s motion papers as factors affecting his request for relief.
For these reasons, tenant Olivo’s argument that tenants’ time to remove the dog never actually expired prior to the dog’s removal, due to the various stays on appeal granted by this court, is without merit.
Nor are tenant Olivo’s remaining arguments that tenants should be entitled to vacatur of the warrant for good cause meritorious.
Tenant Olivo argues for relief pursuant to two statutory provisions, RPAPL 749 (3) and CPLR 5240. This latter provision is not applicable to summary proceedings. Although CPLR 5240 is broadly worded, it forms part of CPLR article 52, which concerns itself with the enforcement of money judgments, not judgments of possession in summary proceedings, which fall under the separate ambit of the Real Property Law and the RPAPL.
CPLR 5240 provides:
“The court may at any time, on its own initiative or the motion of any interested person, and upon such notice as it may require, make an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure. Section 3104 [designation of referee] is applicable to procedures under this article.”
As tenant Olivo notes on appeal, this statute has most often been used to preserve judgment debtors’ homes from forced sale to satisfy money judgments. It is a standard principle of statutory construction that “every statute is to be considered with reference to the general system of laws of which it forms a part” (McKinney’s Cons Laws of NY, Book 1, Statutes § 221 [b], Comment). As broad as the language of CPLR 5240 is, there is no evidence of any legislative intent that it apply outside the ambit of money judgment enforcement, the general subject matter of article 52 of the CPLR. Nor is eviction for violation of a substantial obligation of the lease (as previously affirmed by this court) so disproportionately harsh a penalty that the use of CPLR 5240 would be warranted even if the provision did apply to the subject matter of this *6 proceeding. In fact, eviction is the standard result of such a violation. Therefore, tenant Olivo’s argument that the warrant of eviction should be vacated pursuant to this provision is without merit.
RPAPL 749 (3) was enacted to codify the inherent power of the court to grant relief from its own judgments specifically in the context of landlord-tenant summary proceedings (see Jones v Allen, 185 Misc 2d 443, 447 [App Term, 2d & 11th Jud Dists 2000]). RPAPL 749 (3) provides, in pertinent part:
“The issuing of a warrant for the removal of a tenant cancels the agreement under which the person removed held the premises, and annuls the relation of landlord and tenant, but nothing contained herein shall deprive the court of the power to vacate such warrant for good cause shown prior to the execution thereof.”
Tenant Olivo contends that the combination of the hardship to tenants should they be forced to move after nearly 10 years of residence in the apartment (including difficulties posed by tenant Olivo’s health, which he states is poor), and the fact that they in fact moved the dog out of their apartment should constitute good cause to vacate the warrant in accordance with RPAPL 749 (3).
However, the provision’s usefulness in holdover proceedings is inherently limited. Tenant Olivo seeks to have RPAPL 749 (3) operate to revive the tenancy. As discussed above, in holdover summary proceedings outside the City of New York, once the cure period has run, the tenancy terminates, and the courts are without power to revive the lease, whether through RPAPL 749 (3) or any other mechanism (see Post, 62 NY2d at 25). Moreover, RPAPL 749 (3) states that “[t]he issuing of a warrant for the removal of a tenant cancels the agreement under which the person removed held the premises,” a scenario which occurs in nonpayment proceedings, not holdovers, in which the tenancy is held to terminate when the predicate notice period ends, if the court finds in favor of landlord (Post, 62 NY2d at 25). In the present proceeding, moreover, RPAPL 749 (3) cannot provide a remedy even if the two-month prejudgment “cure period” imposed by the court, and acceded to by the parties, were to extend the lease’s validity. Under the broadest reading of the District Court’s “cure period,” the tenancy would terminate, at the latest, with the entry of judgment after tenants failed to cure within that period, in other words, prior to issuance of the *7 warrant. Here, the final judgment entered upon tenants’ failure to cure, and was affirmed on the previous appeal.
In addition, under any circumstances, tenant Olivo failed to show good cause to vacate the warrant pursuant to RPAPL 749 (3). As demonstrated by the record and tenant Olivo’s own submissions, tenants did not find a new home for their dog until May 2004, more than a year after the court below held against them. The dog was placed with a relative, who apparently had cared for the dog temporarily on many previous occasions, and no reason was given why tenants did not seek to place the dog there, or elsewhere, within the time the court below originally gave them. RPAPL 749 (3) was not intended as a means to allow tenants to cure violations of substantial obligations of their tenancies on their own timetables with impunity. Rather, the grant of this relief is an exercise of the court’s discretion, and in exercising its discretion, the court “must. . . weigh the possible harm engendered or benefit derived by the exercise of that discretion” (New York City Hous. Auth. v Torres, 61 AD2d 681, 683 [1978]). Where, as here, tenants, without showing any equities in their favor, simply engage in sustained attempts to frustrate the enforcement of legal and proper obligations of their tenancy, an exercise of discretion in their favor is not warranted (id.).
It is also clear from the record that tenant Olivo, despite his arguments below and on appeal, did not in fact rely, reasonably or otherwise, upon this court’s stay pending determination of the previous appeal as a reason to believe that the time to remove the dog was extended. Rather, he correctly understood that the stay applied to execution of the warrant only. It was not until this court affirmed the final judgment that tenant Olivo sought to convince first the court below, and then this court, that he had believed all along that the stays gave him more time to remove the dog, and that this belief was correct as a matter of law.
Nor has tenant Olivo demonstrated any other equities. Tenants have lived in the premises for approximately nine years. Landlord has been trying to evict the dog for seven of those years, and tenants themselves for the past three years. Although this tenancy has lasted for a not inconsiderable amount of time, and although this court recognizes that loss of one’s home is always a hardship, tenants’ showing does not rise to the evidentiary level of the decades-long otherwise problem-free tenancies held to be appropriate support for a finding of good cause to *8 vacate a warrant of eviction (see e.g. Parkchester Apts. Co. v Scott, 271 AD2d 273 [2000]).
Rudolph, EJ., Angiolillo and Tanenbaum, JJ., concur.